ORIGINAL

# In the United States Court of Federal Claims

No. 15-634C

(Filed: January 12, 2016)

FILED

JAN 1 2 2016

U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| RONALD BIAS, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

Military pay and abatement claim; failure of
correction board to address relevant facts;
remand

Ronald Bias, *pro se*, Richmond, Texas.

Michael D. Snyder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Benjamin C. Mizer, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas C. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Major Dawn M. Steinberg, Office of the Judge Advocate General, Department of the Navy, Washington, D.C.

## ORDER

LETTOW, Judge.

Plaintiff, Ronald Bias, is a retired Lieutenant Colonel in the Marine Corps and Marine Corps Reserve. He seeks relief in this court in the form of retroactive reinstatement to active duty, back pay and allowances, correction of administrative records, and other equitable relief related to his retirement from the Marine Corps first in November 2006 and then again in November 2010 after his recall to active duty in August 2009. Many of his claims concern events occurring and actions taken shortly before and shortly after that recall. Mr. Bias brought these claims before the Board for Correction of Naval Records (the "Navy Correction Board" or "Board") in December 2009. The Board treated his requests as substantially similar to a prior petition for reinstatement Mr. Bias brought to the Board in July 2007. Although Mr. Bias's requests in December 2009 had a quite different factual basis than those made to the Board more than two years earlier, the Board denied the December 2009 requests for lack of new and material evidence. Mr. Bias also filed a further petition with the Board in December 2013, which the Board also denied. Mr. Bias contests these decisions.

In lieu of an answer or other response to Mr. Bias's complaint, the government filed a motion for remand on December 1, 2015. The government acknowledges that the Board did not

adequately address plaintiff's allegations in his December 2009 petition and requests that this court remand the case to the Board for reconsideration of the totality of Mr. Bias's claims. The government notes that Mr. Bias has separately requested a waiver of indebtedness from the Defense Finance and Accounting Service ("DFAS"), and that this request was never adjudicated due to the pendency of the petition Mr. Bias filed with the Board in December 2013 as well as the present case. The government advises that remand in this case potentially would allow DFAS to complete its processing of plaintiff's waiver request. Mr. Bias opposes a remand and requests that the court proceed to render judgment on the administrative record respecting his claims.

The court has determined that remand is appropriate to allow the Board to reconsider plaintiff's claims, including the matters pending before DFAS.

## BACKGROUND[1]

### A. *Service as an Officer in the Marine Corps*

Mr. Bias served as an active duty officer in the Marine Corps from February 1987 to June 1997, at which point he transferred to the Selected Marine Corps Reserve. Compl. ¶¶ 12-13.[2] In June 1999, plaintiff transferred to the Marine Corps Active Reserve Program, where he was promoted to the rank of lieutenant colonel in November 2003. Compl. ¶¶ 15-16. In April 2006, the Marine Corps Headquarters notified plaintiff that he was eligible to retire. Compl. ¶ 17. The Marine Corps subsequently approved plaintiff's request to retire effective November 1, 2006. Compl. ¶¶ 17-18.

### B. *Plaintiff's Injury and His 2007 Petition to the Board*

In July 2007, Mr. Bias petitioned the Board to be reinstated to active duty to seek medical treatment for an ankle injury he sustained in January 2006, several months prior to his retirement. Compl. ¶ 21; Def.'s Mot. to Remand ("Def.'s Mot.") at 2 & App. at 6-10, ECF No. 11.[3] He asserted that the Marine Corps violated certain regulations in processing his retirement because he was not informed that the injury was considered permanent until March 2007—four

---

[1] The court has drawn upon the submissions of the parties attendant to the pending motion to provide a background and context for the case.

[2] Mr. Bias initially entered on active duty as an enlisted man in the Navy. In 1983, he enlisted in the Naval Reserve Delayed Entry Program and reported to boot camp in 1984. Compl. ¶ 8. Upon completion of boot camp, Mr. Bias was awarded a Naval ROTC scholarship to Louisiana State University. Compl. ¶ 9. Upon graduation from Louisiana State in December 1986, he was commissioned as a second lieutenant in the Marine Corps and entered on active duty in February 1987. Compl. ¶¶ 11-12.

[3] A number of records pertinent to Mr. Bias's service in the Marine Corps and his claims were appended to the government's motion to remand, and those records are cited as "Def.'s Mot. App. at __."

months after his retirement—when he received a letter from the Marine Corps disqualifying him from flight duties. Compl. ¶¶ 20-21; Def.'s Mot. App. at 6-8. Among other relief, Mr. Bias requested reinstatement to active duty effective November 1, 2006 and commensurate back pay and allowances. Compl ¶ 21; Def.'s Mot. App. at 8. The Board denied plaintiff's request, finding that the Marine Corps properly determined plaintiff was "physically qualified for retirement, notwithstanding [his] ankle condition" and other concerns noted in his pre-retirement medical evaluation. Def.'s Mot. App. at 9-10. Mr. Bias requested reconsideration of the Board's decision in October 2008, but the Board denied this request due to a lack of new and material evidence. *Id.* at 12-15; *see also* Def.'s Reply in Support of Its Mot. for Remand ("Def.'s Reply") at 2, ECF No. 13 (quoting Secretary of the Navy Instruction 5420.193, Encl. 1, § 9 ("After final adjudication [by the Board], further consideration will be granted only upon presentation by the applicant of *new and material evidence*.") (emphasis added)).

## C. *Cancellation of Plaintiff's Retirement and His 2009 Petition to the Board*

In June 2009, Mr. Bias received a letter from the Marine Corps Headquarters notifying him there had been an administrative error in calculating his active duty service prior to his retirement. Compl. ¶ 22; Def.'s Mot. App. at 1-3. According to this letter, plaintiff had only served approximately 18 years and 10 months of active duty service, which fell short of the minimum service time required by law for retirement (20 years and one day). Def.'s Mot. App. at 1. Consequently, the Secretary of the Navy directed the cancellation of plaintiff's retirement, and Mr. Bias was given the option of either returning to active duty service or being discharged from the Marine Corps without retirement. *Id.* Plaintiff opted to return to active duty and was recalled on August 1, 2009 for a period of 16 months. Compl. ¶ 24 & Ex. C. At the same time, DFAS initiated proceedings to recover $117,194.00 in retirement pay and benefits that had been made to Mr. Bias after November 2006. Compl. ¶ 25 & Ex. D.

In December 2009, Mr. Bias petitioned to the Board for retroactive reinstatement to active duty effective November 1, 2006. Compl. ¶ 26; Def.'s Mot. App. at 17-19. In this petition, he did not reassert his allegations related to his ankle injury; instead, he reasoned that if his retirement in 2006 was invalid, his release from active duty was likewise invalid. Def.'s Mot. App. at 17-18. Accordingly, plaintiff claimed he was entitled not only to retroactive reinstatement, but also $277,700.10 in taxable back pay and $76,424.26 in non-taxable allowances. *Id.* at 17-18. He separately asserted that his non-selection for promotion to colonel for fiscal year 2011 was unfair because he was negatively affected by a perceived break in service between November 2006 and August 2009. *Id.* at 18. Plaintiff requested "remedial consideration for promotion with [his] peers" as part of the fiscal year 2009 review process. *Id.*

The Board treated Mr. Bias's request for retroactive reinstatement to active duty as substantially the same "request for corrective action" that had previously been denied by the Board in response to plaintiff's petition in July 2007. Def.'s Mot. App. at 20. As a result, the Board denied plaintiff's reinstatement request for a lack of new and material evidence. *Id.* The Board did, however, grant Mr. Bias's request to remove his non-selection for promotion from his record so he could compete for promotion in the next available promotion board. *Id.* at 21-23.

D. *Plaintiff's Waiver Request to DFAS and 2013 Petition to the Board*

Mr. Bias again retired from the Marine Corps on November 1, 2010, having completed the full 20 years of active duty service required by law. First Am. Compl. Ex. M; Def.'s Mot. at 3. At that point, plaintiff had not repaid to DFAS the retirement payments made to him between November 2006 and August 2009. *See* First Am. Compl. Ex. N; Def.'s Mot. at 6-7. In October 2013, plaintiff submitted a request for waiver of indebtedness to DFAS seeking relief from these past-due payments and associated interest. Def.'s Mot. at 3, 6 & App. at 24. DFAS informed Mr. Bias that it was unable to adjudicate his waiver request because an additional petition had been filed by him with the Board in December 2013. Def.'s Mot. App. at 24. In that new petition, plaintiff alleged that his retirement in 2010 was in fact a "constructive discharge" from the Marine Corps due to "whistleblower retaliation," "undue command influence," "possible abuse of authority," and a "possible violation of privacy rights." *Id.* at 25. He sought reinstatement to active duty effective November 1, 2010 with the accompanying back pay and allowances, as well as consideration by a special board for promotion to colonel in the active reserve program. *Id.*

In January 2015, the Office of the Secretary of the Navy (Manpower and Reserve Affairs) affirmed the Board's denial of Mr. Bias's December 2013 petition. Def.'s Mot. at 4 & App. at 26. DFAS did not then reinitiate processing of plaintiff's request for waiver of indebtedness, and that request was again put on hold when plaintiff filed the present complaint on June 19, 2015. Def.'s Mot. at 4, 6. As of May 2015, DFAS indicated that plaintiff owed $157,512.00, which included a $40,000 fee that was added to plaintiff's original repayment debt when it was reported to the Internal Revenue Service ("IRS") by DFAS. First Am. Compl. Ex. N; Def.'s Mot. for Enlargement of Time to Respond to Compl. at 1-2, ECF No. 8.

## ANALYSIS

### A. *Subject Matter Jurisdiction*

As a threshold matter, "[j]urisdiction must be established . . . before the court may proceed with the merits." *Overview Books, LLC v. United States*, 72 Fed. Cl. 37, 40 (2006), *aff'd*, 232 Fed. Appx. 989 (Fed. Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)). In this instance, the court's subject matter jurisdiction is defined by the Tucker Act, 28 U.S.C. § 1491, which grants jurisdiction over certain claims seeking money damages from the government. 28 U.S.C. § 1491(a)(1). Because the Tucker Act is a jurisdictional statute which "does not confer any substantive rights upon a plaintiff," the plaintiff "must establish an independent substantive right to money damages from the United States—that is, a money-mandating source within a contract, regulation, statute or constitutional provision—in order for the case to proceed." *Volk v. United States*, 111 Fed. Cl. 313, 323 (2013) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008)).

In this instance, the Military Pay Act, 37 U.S.C. § 204, provides the requisite money-mandating source of law to support Mr. Bias's claims under the Tucker Act. *See, e.g., Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) ("In the context of military

discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act."); *Straughter v. United States*, 120 Fed. Cl. 119, 123 (2015).[4]  This court also has jurisdiction under the Tucker Act to "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" when such an order would "provide an entire remedy and . . . complete the relief afforded by the judgment [on a claim for monetary damages]." 28 U.S.C. § 1491(a)(2); *see also Laughlin v. United States*, __ Fed. Cl. __, __, 2015 WL 8806331, at *7 (Dec. 15, 2015).

Mr. Bias requests a wide range of relief in addition to monetary damages and retroactive reinstatement, including injunctive relief to bar DFAS and the IRS from further actions to collect the asserted debt, removal of "negative credit bureau entries . . . from plaintiff's credit profile," special consideration for promotion, and restoration of certain military education benefits. First Am. Compl. at 9-10.  To support these wide-ranging requests, the court would have to find that these elements of relief were necessary to "provide an entire remedy" for the judgment afforded on plaintiff's claim for monetary damages under the Military Pay Act. *See* 28 U.S.C. § 1491(a)(2); *Laughlin*, 2015 WL 8806331, at *7. Even if Mr. Bias were ultimately to receive a favorable judgment, this court may not have factual grounds or even jurisdiction to grant this relief.  Moreover, because the Navy Correction Board has broader equitable powers than does

---

[4]In addition to claiming entitlement to back pay and allowances under the Military Pay Act, plaintiff claims damages resulting from the government's alleged violation of 10 U.S.C. § 6323 (which governs the active duty service requirements for retirement of Navy or Marine Corps officers). First Am. Compl. ¶¶ 76-77. In the context of plaintiff's claims, Section 6323 does not apply.  The statute states that "an officer retired under this section is entitled to retired pay computed under [10 U.S.C. § 6333]." 10 U.S.C. § 6323(e). Mr. Bias is not claiming entitlement to retired pay, however.  Rather, he is in effect claiming that the government caused him damages (including the loss of military pay and allowances) by inducing and allowing him to enter into an "erroneous retirement" before he had completed the required 20 years of active duty service. First Am. Compl. ¶ 76-77. The court's jurisdiction in that respect rests on plaintiff's alleged entitlement to back pay and allowances under the Military Pay Act, with an attendant claim for other relief consequent to such money damages, resulting from the government's error in inducing and approving his retirement.
    Plaintiff also claims entitlement to damages under the Fifth Amendment to the United States Constitution, alleging that his due process rights were violated when the government "arbitrarily and capriciously caus[ed] him to forfeit all active duty pay and allowances to which he was legally entitled and by failing to properly consider his timely filed application for waiver of erroneous retired pay received." First Am. Compl. ¶ 83. This court does not have jurisdiction over claims arising under the Due Process clauses of the Fifth and Fourteenth Amendments. *See, e.g., Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."). Again, to the extent that plaintiff is claiming entitlement to back pay, allowances, and related relief as a result of his 2006 "erroneous" retirement, this court's jurisdiction rests on the provisions of the Tucker Act and the Military Pay Act.

this court, Mr. Bias might be able to receive more relief administratively through the Board or DFAS than from this court.

## B. *Motion to Remand*

The Tucker Act authorizes the court to "remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2); *see also* Rule 52.2(a) of the Rules of the United States Court of Federal Claims ("RCFC"). If a decision of a military correction board, such as the Board for Correction of Naval Records, failed to account for or explain certain evidence when rendering its decision, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Rather, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.*; *see also Walls v. United States*, 582 F.3d 1358, 1367-68 (Fed. Cir. 2009) (vacating a trial court's decision to reject a Navy Petty Officer's claim for back pay, and remanding with instructions to remand to the Navy Correction Board for consideration of new evidence); *Riser v. United States*, 93 Fed. Cl. 212, 217 (2010) (remanding a military pay claim rather than considering *de novo* supplementary materials that should have been, but were not, considered by a corrections board). A court also has discretion to grant the government's request for a remand to reconsider its previous position, without admitting error, as long as such a request is not "frivolous or in bad faith." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).

It is motion to remand, the government acknowledges that the Board did not adequately explain the basis for denying Mr. Bias's December 2009 petition. Def.'s Mot. at 5-6. The government concedes that plaintiff's "December 2009 petition set forth an allegation of error regarding his 2006 release from active duty that the [Board] had not yet addressed"—namely, that the Marine Corps erred in notifying then-Lieutenant Colonel Bias that he was eligible to retire and then approving his retirement request. *Id.* at 6; *see also* Compl. ¶ 17; Pl.'s Opp'n to Def.'s Mot. to Remand and Alternative Mot. for Judgment on the Administrative Record ("Pl.'s Opp'n") at 5-6, ECF No. 12. Consequently, the government requests that the court remand this case to the Board for reconsideration of the evidence submitted by Mr. Bias. Def.'s Mot. at 6. Remand would (1) allow and require the Navy Correction Board to consider relevant evidence it previously ignored and reach a reasoned decision on an appropriate record, and (2) provide this court with a comprehensive rationale for any action the Navy Correction Board might take. *Id.* The government further asserts that remand potentially will allow DFAS to adjudicate Mr. Bias's request for waiver of indebtedness, which may resolve part of plaintiff's claims in the present case to everyone's satisfaction and thereby promote judicial economy. *Id.* at 6-7; *see also* Def.'s Reply at 3-4.

Mr. Bias opposes remand and asserts that *Florida Power & Light* is inapposite because this is not a case where the Board failed to consider or explain certain evidence, but rather where the Board considered all the evidence and nevertheless reached a "flawed conclusion." Pl.'s Opp'n at 2. He asserts that this court's review is limited to whether the Board's decision to deny his petition was "arbitrary, capricious, unsupported by substantial evidence, or contrary to

applicable statutes and regulations." *Id.* at 1-2 (citing *Cronin v. United States*, 765 F.3d 1331, 1334 (Fed. Cir. 2014)).

If the government had decided in this case to defend the Board's decision based on the record before the Board, Mr. Bias is correct that this court would review the Board's decision under the "arbitrary and capricious" standard specified in the Administrative Procedure Act. *See SKF USA*, 254 F.3d at 1028. That, however, is not the circumstance at hand. The government has acknowledged that the Board's denial of plaintiff's petition is flawed and that a remand is appropriate. There is no indication that this request for remand is frivolous or in bad faith; indeed, government counsel asserts that he has coordinated this request with the Board so that it will expeditiously complete its review on remand. Def.'s Mot. at 6; Def.'s Reply at 3. In addition, DFAS has stayed all collection efforts against Mr. Bias and has recalled the debt from the IRS to alleviate harm to Mr. Bias during the pendency of this remand. Def.'s Mot. for Enlargement of Time to Respond to Compl. at 1; Def.'s Reply at 4. As a result, the court has concluded that remand is appropriate.[5]

## CONCLUSION

The government's motion to remand is GRANTED. Pursuant to RCFC 52.2(a), this case is remanded to the Board for Correction of Naval Records for a period not to exceed six months. *See* RCFC 52.2(b)(1)(B). In conjunction with its consideration of Mr. Bias's claims on remand, the Board should seek a recommendation from DFAS regarding plaintiff's request for waiver of indebtedness. This case is stayed pending the results of the remand. *See* RCFC 52.2(b)(1)(C). The court requests that the government submit status reports every 90 days during the pendency of the remand regarding the progress of the ensuing proceeding before the Board. *See* RCFC 52.2(b)(1)(D).

It is so ORDERED.

Charles F. Lettow
Judge

---

[5]In his response, Mr. Bias also moved for judgment on the administrative record pursuant to RCFC 52.1. Pl.'s Opp'n at 1. The government opposes this motion as premature because the administrative record has not yet been filed in this case. Def.'s Reply at 5. To emphasize that contention, the government has moved to strike Mr. Bias's motion under RCFC 12(f). *Id.* In light of the grant of the government's motion for remand, plaintiff's alternative motion for judgment on the administrative record is DENIED as moot, as is the government's motion to strike.