ORIGINAL

# In the United States Court of Federal Claims

No. 15-634C

(Filed: April 28, 2017)

FILED

APR 2 8 2017

U.S. COURT OF
FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| **RONALD BIAS,** | ) | Military pay claim; challenge to grant by |
|  | ) | correction board of equitable relief as |
| **Plaintiff,** | ) | insufficient |
|  | ) | |
| v. | ) | |
|  | ) | |
| **UNITED STATES,** | ) | |
|  | ) | |
| **Defendant.** | ) | |
|  | ) | |

Ronald Bias, *pro se*, Richmond, Texas.

Michael D. Snyder, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Benjamin C. Mizer, former Principal Deputy Assistant Attorney General, Civil Division, Joyce R. Branda, Acting Assistant Attorney General, Civil Division and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Major Dawn M. Steinberg, Office of the Judge Advocate General, Department of the Navy, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiff, Ronald Bias, a retired Lieutenant Colonel in the Marine Corps and Marine Corps Reserve, brings suit in this court to challenge a 2016 decision by the Board for Correction of Naval Records ("the Board"). Mr. Bias retired in 2006 after the Marine Corps incorrectly informed him that he had earned 20 years of qualifying service and was eligible for retirement pay. The Marine Corps learned of its mistake in 2009 and notified Mr. Bias, who then returned to active duty until becoming eligible for retirement pay and retiring again in 2010. The resulting dispute primarily concerns pay and allowances during the hiatus between Mr. Bias' two retirements. After addressing several petitions from Mr. Bias between 2007 and 2016, the Board most recently awarded Mr. Bias *de facto* retirement status from November 1, 2006, the date of his first retirement, to August 2009, when he returned to active duty, and accordingly allowed him to keep the retirement pay he received during that period. Mr. Bias now contends that the Board erred by only granting him partial relief, arguing that he is entitled to, among other things, retroactive reinstatement and back pay as of November 1, 2006.

1

7014 1200 0000 9093 7627

Pending before the court is the government's motion to dismiss plaintiff's complaint, or, in the alternative, for judgment on the administrative record, as well as Mr. Bias' cross-motion for judgment on the administrative record. For the reasons stated, the government's motion to dismiss for lack of subject matter jurisdiction is granted in part and denied in part, the government's motion for judgment on the administrative record is granted, and Mr. Bias' cross-motion is denied.

## FACTS[1]

### A. Mr. Bias' 2006 Retirement and 2007 Petition to the Board

Mr. Bias is a retired Lieutenant Colonel in the Marine Corps, and has served both on active duty and in the active reserve. AR 1-3.[2] In June 2005, the Marine Corps notified Mr. Bias that he had completed 20 years of qualifying service and was eligible to receive reserve retirement pay if he chose to request retirement status. AR 32-1093 to -95. Nearly a year later, in April 2006, the Marine Corps informed Mr. Bias that he was eligible for active duty retirement. AR 9-98. Mr. Bias subsequently requested retirement and was released from active duty effective November 1, 2006, "[s]ubject to active duty recall. . . ." AR 32-1026.

Shortly thereafter, in February 2007, the Marine Corps determined that Mr. Bias was not physically qualified for any duties involving flying because of an ankle injury Mr. Bias suffered in 2006, prior to his retirement. AR 31-725. Mr. Bias petitioned the Board in July 2007 for reinstatement to active duty in order to seek medical treatment for his injury. *See* AR 31-685 to -87. He asserted that the Marine Corps violated particular regulations by processing his retirement without informing him that his ankle injury was considered permanent. AR 31-686 to -87. He sought reinstatement to active duty as of November 1, 2006, as well as back pay and allowances, among other forms of relief. AR 31-687. On September 22, 2008, the Board considered and rejected the petition, determining that Mr. Bias did not show he was "unfit to reasonably perform active military service when released from active duty . . . or that [his] release was erroneous or unjust." AR 31-525 to -26. The Board agreed with a pre-retirement health assessment indicating that despite his ankle injury and other ailments, Mr. Bias was physically qualified for retirement. AR 31-526. On November 21, 2008, his request for reconsideration was denied due to a lack of new and material evidence. AR 4-57.

---

[1]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the proceedings before the Board, filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that proceedings on the administrative record "provide for trial on a paper record, allowing fact-finding by the trial court").

[2]Citations to the administrative record refer to the record as filed on August 19, 2016. The record is divided into tabs and paginated sequentially. In citing to the administrative record, the court will first designate the tab, followed by the page number. For example, AR 1-3 refers to tab 1, page 3 of the administrative record.

### B. Mr. Bias' 2009 Return to Active Duty and Petition to the Board

In March 2008, during the Board's review of Mr. Bias' records, the Board informed the Marine Corps that it had found an error in the retirement credits previously attributed to Mr. Bias. AR 31-710. On November 1, 2006, the date Mr. Bias retired, he only had accumulated 18 years and approximately 9 months of active duty service. AR 31-641. Accordingly, the Marine Corps notified Mr. Bias on June 18, 2009 that he was "ineligible to receive retired pay and must return to active duty and serve more than 20 years to receive an active duty retirement." *Id.* If Mr. Bias chose not to return to active duty, he would be discharged. *See id.* He returned to active duty on August 1, 2009 as a Marine instructor at Amite High School in Louisiana. AR 2-32. Additionally, at that same time, the Defense Finance and Accounting Service ("DFAS") instituted proceedings to recover $117,194 in retirement pay and benefits that Mr. Bias had received between November 2006 and July 2009. AR 10-109.[3]

Mr. Bias submitted a petition to the Board in December 2009, requesting retroactive reinstatement to active duty and back pay from November 1, 2006, among other forms of relief. AR 5-59. In that petition, he noted the error committed by the Marine Corps regarding his retirement eligibility. *Id.* The Board considered the petition to be a request for reconsideration of its previous decision addressing Mr. Bias' ankle injury, and denied the request for reinstatement and back pay due to a lack of new and material evidence. AR 5-66.[4]

### C. Mr. Bias' 2010 Retirement and 2013 Petitions to DFAS and the Board

While on active duty as an instructor at Amite High School in 2010, Mr. Bias received permanent change of station orders that assigned him to the Marine Forces Reserve in New Orleans, Louisiana. AR 6-74. Rather than comply with those orders, Mr. Bias chose to retire on November 1, 2010. *Id.*; AR 6-78. By then, he had earned more than 20 years of active service, *see* AR 10-102, and was thus eligible for retirement pay.

In October 2013, after his second retirement, Mr. Bias submitted a request to DFAS for waiver of indebtedness involving recapture of the retirement pay he had received during his ostensible retirement from November 1, 2006 to August 1, 2009. *See Bias*, 124 Fed. Cl. at 664, 666. In December 2013, he also petitioned the Board to request reinstatement to active duty and back pay from November 1, 2010, as well as consideration for promotion to colonel. AR 6-68. Mr. Bias asserted that he received his permanent change of station orders, which prompted his 2010 retirement, because he had reported fraudulent activity by another Marine instructor at the school, who was a retired senior enlisted man, and the school's principal. *See* AR 6-69. His petition included claims related to whistleblower retaliation, abuse of authority, and violations of privacy. AR 6-70. The Board denied the petition and found that relief was unwarranted, stating

---

[3]By May 2015, Mr. Bias' debt was $157,512. *See Bias v. United States*, 124 Fed. Cl. 663, 666 (2016).

[4]The Board nonetheless granted Mr. Bias' request to remove the non-selection of a promotion to colonel, thus allowing him to compete for the promotion before the next available promotion board. *See* AR 31-616 to -17.

that the evidence did not support Mr. Bias' claims. AR 6-82 to -83. DFAS never acted on the submission before it due to the petition Mr. Bias had filed with the Board. *Bias*, 124 Fed. Cl. at 664.

*D. The Court's Remand and the Board's 2016 Decision*

On June 19, 2015, Mr. Bias filed suit in this court. *See generally* Compl. Shortly thereafter, on January 12, 2016, the court remanded the case to the Board "for a period not to exceed six months" and stayed the case pending the results of the remand. *Bias*, 124 Fed. Cl. at 668. The court agreed with the government that remand was appropriate because the Board's most recent decision had failed to address a claim by Mr. Bias regarding his 2006 retirement, "namely, that the Marine Corps erred in notifying then-Lieutenant Colonel Bias that he was eligible to retire and then approving his retirement request." *Id.* at 667 (citations omitted). The court stated that on remand the Board should consider that claim and "seek a recommendation from DFAS regarding plaintiff's request for waiver of indebtedness." *Id.* at 668.

Following the court's remand, DFAS issued an advisory opinion on February 12, 2016. AR 2-32. DFAS recommended that the Board "apply the De Facto Retired Member Doctrine, and correct [Mr. Bias'] records to show he was a De Facto Retiree during the timeframe from 1 November 2006 through 31 July 2009, and direct his $117,194 retired pay debt be removed." AR 2-36. The Board subsequently considered Mr. Bias' claims, including the circumstances of his 2006 and 2010 retirements, and his requests for back pay, allowances, retroactive reinstatement, consideration for promotion, and other equitable relief. AR 1-2. The Board concluded:

> (1) That [Mr. Bias] be placed in a *de facto* retired status from 1 November 2006 through his return to active duty in August 2009; and
>
> (2) That any debt associated with receipt of active duty retirement pay for this period be waived; and
>
> (3) That no further action or correction to [Mr. Bias'] record is warranted with respect to his November 2006 or his November 2010 retirement; his request for reinstatement to active duty or back pay and allowances related to such reinstatement; entitlement to a special selection board for the FY-09 US[MC]R Colonel AR Promotion Selection Board; or other equitable relief; and
>
> (4) That DFAS should conduct an accounting into [Mr. Bias'] receipt of pay and benefits to reconcile [his] claim that he has already repaid monies received as separation pay, which DFAS values as $46,333.45. . . .

AR 1-4 to -5.

*E.   Present Claims*

In a Second Amended Complaint filed on August 19, 2016, Mr. Bias challenges the Marine Corps' actions that resulted in his 2006 and 2010 retirements, alleging (1) a violation of 10 U.S.C. § 6323, which governs the active duty service requirements for the retirement of Marine Corps officers, and (2) violations of the Military Pay Act, 37 U.S.C. § 204. *See* Second Am. Compl. ¶¶ 119-29. In light of the Board's most recent decision, Mr. Bias asserts that the Board erred by only granting him partial relief through *de facto* retired status. Pl.'s Opp'n to Def.'s Mot. to Dismiss . . . [and] Mot. for Judgment on the Administrative Record, and Pl.'s Cross-Mot. for Judgment on the Administrative Record ("Pl.'s Cross-Mot.") at 17, ECF No. 27. He seeks retroactive reinstatement to active duty as of November 1, 2006 with full back pay and allowances, as well as correction of his administrative records. Second Am. Compl. at 10. He also requests that the court void his 2010 retirement and place him in *de facto* retired status from November 1, 2010 to the present. Second Am. Compl. at 11. In addition, he seeks a wide range of injunctive relief, including relief to bar the government from collecting debts owed by Mr. Bias, consideration for promotion, and restoration of military education benefits. Second Am. Compl. at 10.

On October 21, 2016, the government moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, or, in the alternative, for judgment on the administrative record. Def.'s Mot. to Dismiss, and, in the Alternative, for Judgment Upon the Administrative Record ("Def.'s Mot."), ECF No. 26. Mr. Bias responded with a cross-motion for judgment on the administrative record. Pl.'s Cross-Mot. The motions have been fully briefed and were addressed at a hearing held on April 20, 2017.

## JURISDICTION

### A.   The Tucker Act and the Military Pay Act

As plaintiff, Mr. Bias has the burden of establishing jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Pursuant to the Tucker Act, the court has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity and allows a plaintiff to sue the United States for money damages, *United States v. Mitchell*, 463 U.S. 206, 212 (1983), but it does not provide a plaintiff with any substantive rights, *United States v. Testan*, 424 U.S. 392, 398 (1976). "[A] plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citing *Mitchell*, 463 U.S. at 216; *Testan*, 424 U.S. at 398).

Here, the Military Pay Act, 37 U.S.C. § 204, is a money-mandating source of law that provides the court with jurisdiction. *See, e.g., Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The court's jurisdiction encompasses Mr. Bias' claim for back pay and allowances, *see Martinez*, 333

F.3d at 1303 (citations omitted), as well as the review of the Board's final decision in 2016, *see Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) ("If an officer elects to pursue a remedy before the Corrections Board, after the Board renders a final decision, the officer may effectively obtain review of that decision in the Court of Federal Claims by filing suit under the Tucker Act.") (citation omitted).[5] Further, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2); *see also Martinez*, 333 F.3d at 1303 (citing 28 U.S.C. § 1491(a)(2)). A finding in favor of Mr. Bias would provide the court with juridical power to entertain certain of his other requests for injunctive relief, such as relief from debt collection and consideration for promotion, if the court determined that "these elements of relief were necessary to 'provide an entire remedy' for the judgment afforded on plaintiff's claim for monetary damages under the Military Pay Act." *Bias*, 124 Fed. Cl. at 667 (citing 28 U.S.C. § 1491(a)(2); *Laughlin v. United States*, 124 Fed. Cl. 374, 382 (2015), *aff'd*, 665 Fed. Appx. 902 (Fed. Cir. 2016)).

### B. Mr. Bias' 2006 Retirement

Despite the jurisdictional foundation stemming from this chain of events, the government argues that the statute of limitations has expired to the extent Mr. Bias' claims relate to his 2006 retirement. Def.'s Mot. at 18-21. Any claim brought before this court must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501. Generally, where a plaintiff seeks back pay due to an alleged wrongful discharge, "the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." *Martinez*, 333 F.3d at 1314; *see also Straughter v. United States*, 120 Fed. Cl. 119, 123-24 (2015) (holding that plaintiff's challenge to the government's alleged wrongful discharge in 1989 was barred because plaintiff filed his complaint 25 years later).

The government's argument is misplaced. Unlike in *Martinez*, where the claim was based upon whether plaintiff's discharge was wrongful, *see* 333 F.3d at 1299-1300, there is no dispute that Mr. Bias was wrongly retired in 2006 after receiving incorrect information regarding his retirement eligibility. The Marine Corps acknowledged as much when it informed Mr. Bias of the error in 2009 and directed him to either return to active duty or be discharged. AR 31-641. That notice from the Marine Corps resolved any claim that would have accrued in 2006. *See* Hr'g Tr. 7:23 to 8:2, 8:24 to 9:8 (Apr. 20, 2017).[6] Instead, Mr. Bias' claims are based upon the

---

[5]Mr. Bias also relies on 10 U.S.C. § 6323, which provides that "an officer retired under this section is entitled to retired pay computed under [10 U.S.C. § 6333]." 10 U.S.C. § 6323(e). Nonetheless, as the court has previously explained, Section 6323 is not relevant to Mr. Bias' claims because he is "not claiming entitlement to retired pay." *Bias*, 124 Fed. Cl. at 666 n.4. Mr. Bias' claims are instead based upon his alleged entitlement to back pay and allowances, and are thus governed by the Military Pay Act.

[6]The date will be omitted from further citations to the transcript of the hearing held on April 20, 2017.

consequences of that notice, including his return to active duty on August 1, 2009, *see* AR 2-32, and the Marine Corps' subsequent attempt to recover Mr. Bias' retirement pay, *see* AR 10-109. Such events are not barred by the statute of limitations.[7]

### C.  Mr. Bias' 2010 Retirement

The court does not have jurisdiction, however, over Mr. Bias' 2010 retirement claim because it is based upon allegations of retaliation and privacy violations. *See* Second Am. Compl. ¶¶ 126-28. Mr. Bias' retaliation claim arises under the Military Whistleblower Protection Act ("MWPA"), Pub. L. No. 100-456, § 846, 102 Stat. 1918, 2027 (1988) (codified at 10 U.S.C. § 1034). The court lacks jurisdiction over such a claim. *See, e.g., Klingenschmitt v. United States*, 119 Fed. Cl. 163, 185 (2014) (explaining that the court lacks jurisdiction over whistleblower retaliation claims because the MWPA's "comprehensive scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court") (citations omitted), *aff'd*, 623 Fed. Appx. 1013 (Fed. Cir. 2015); *Santana v. United States*, 127 Fed. Cl. 51, 56 (2016) (same), *appeal filed*, No. 16-2435 (Fed. Cir.).[8] Additionally, Mr. Bias alleges privacy violations under the Privacy Act of 1974, Pub. L. No. 93-579, § 3, 88 Stat. 1896, 1897 (1974) (codified at 5 U.S.C. § 552a), but this court lacks jurisdiction because the Privacy Act vests jurisdiction in the United States District Courts. *See* 5 U.S.C. § 552a(g)(1); *Parker v. United States*, 77 Fed. Cl. 279, 291-92 (2007), *aff'd*, 280 Fed. Appx. 957 (Fed. Cir. 2008).

---

[7]Mr. Bias asserts that his claims are not barred by the statute of limitations due to the "half-a-loaf doctrine." Pl.'s Cross-Mot. at 9. The half-a-loaf doctrine provides that, under particular circumstances, the court can review a decision by a corrections board granting partial relief, to determine whether full relief is warranted. *See Martinez*, 333 F.3d at 1325 (Plager, J., dissenting) (citing *DeBow v. United States*, 434 F.2d 1333, 1335 (Ct. Cl. 1970)). However, there is significant doubt about the viability of the doctrine after *Martinez*, where the court of appeals held that a petition to a corrections board does not affect the date of accrual. *Martinez*, 333 F.3d at 1314-15. Regardless, the court need not consider the doctrine because the statute of limitations does not bar Mr. Bias' claims for the reasons discussed above.

[8]Mr. Bias has also filed suit in district court under the False Claims Act, Pub. L. No. 97-258, 96 Stat. 877, 978 (1982) (codified at 31 U.S.C. §§ 3729-30), against the retired senior enlisted man assigned to Amite High School, the school's principal, and the school board. That suit includes a retaliation claim. *See generally United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, No. CIV.A. 12-2202, 2014 WL 1512001 (E.D. La. Mar. 26, 2014) (dismissing Mr. Bias' retaliation claims), *reversed in part*, 816 F.3d 315 (5th Cir. 2016) (reversing the dismissal of Mr. Bias' retaliation claim against the school board and remanding the case). That case reportedly has been scheduled for trial. Hr'g Tr. 20:12-16.

The events between Mr. Bias and the senior enlisted man have been discussed in greater detail in a suit filed by the senior enlisted man, who brought a claim in district court to challenge the Navy's decision to decertify him as an instructor. *See Foster v. Mabus*, 103 F. Supp. 4d 95, 98-105 (D.D.C. 2015).

**STANDARD FOR DECISION**

The court reviews the decision of a military board under a deferential standard, examining whether the decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). The party challenging the decision must show that there is "cogent and clearly convincing evidence" for reversal. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)). "As long as the Board's action comported with the procedural standards mandated by statute or regulation, considered the relevant evidence, and reached a reasonable conclusion, the court will not disturb the Board's decision." *Verbeck v. United States*, 118 Fed. Cl. 420, 424 (2014) (citing *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011); *Helferty v. United States*, 113 Fed. Cl. 308, 316 (2013), *aff'd*, 586 Fed. Appx. 586 (Fed. Cir. 2014)).

**ANALYSIS**

Mr. Bias argues that the Board's decision to provide only *de facto* retirement status, without more, was arbitrary and capricious because it "failed to correct plain legal error." Pl.'s Cross-Mot. at 17. In this respect, the Board considered the relevant evidence pertaining to Mr. Bias' claims and reached a reasonable conclusion that corrected the Marine Corps' error. The Board explained that Mr. Bias "erroneously retired on 1 November 2006 as the result of an administrative error based on [a] miscalculation of qualifying active duty service credit." AR 1-5.[9] Because Mr. Bias relied on that error when he retired in 2006, *de facto* retirement was appropriate and the Board therefore provided that Mr. Bias' "service record should be corrected to reflect retired status from 1 November 2006 to August 2009, with entitlement to retired pay during that period." AR 1-6.[10] The Board has the authority to grant that type of equitable relief. *See* 10 U.S.C. § 1552.

---

[9]The Board noted that Mr. Bias' 2006 ankle injury did not affect the propriety of the 2006 retirement because "it only disqualified [Mr. Bias] from flying and not military service." AR 1-5.

[10]The Board also considered Mr. Bias' request for consideration for a promotion, AR 1-2, but denied the request, AR 1-4. Because Mr. Bias was *de facto* retired as of November 1, 2006, the date he in fact requested retirement, he would not have been entitled to consideration for the promotion. AR 1-6 to -7.

Additionally, regarding the 2010 retirement, the Board determined that no relief was warranted because "the evidence did not support the contention that the 1 November 2010 retirement was either unjust or erroneous." AR 1-5. It also noted that the 2010 retirement was "consistent with regulatory and statutory guidance." AR 1-6. The Board reached that conclusion after considering Mr. Bias' claims of "[w]histleblower retaliation, undue command influence, possible abuse of authority, possible violation of privacy rights, or any combination of the aforementioned harms." AR 1-5.

The Board's decision is consistent with the recommendation it received from DFAS. *See* AR 2-32 to -36. In its advisory opinion, DFAS considered whether Mr. Bias "should have been returned to active duty" for the 2006 to 2009 time period. AR 2-34. Ultimately, DFAS recommended *de facto* retirement, rather than return to active duty, because it was "just and fair that [Mr. Bias] be allowed to keep the 'retired pay' he received during this erroneous retirement phase." AR 2-36. DFAS explained that the circumstances of Mr. Bias' 2006 retirement and 2009 notice "fit[] squarely into the De Facto Retired Member doctrine articulated by the Comptroller General" and later applied by the Army Board for the Correction of Military Records. *See* AR 2-33 to -34. The doctrine would also allow Mr. Bias to extinguish his debt, which might not occur if he instead were returned to active duty or be deemed to have returned to active duty. *See* AR 2-34.

Mr. Bias responds that the Board's relief is insufficient, asserting that the Board must "restore [him] to his pre-error status" by reinstating him to active duty effective November 1, 2006 with back pay and benefits. *See* Pl.'s Cross-Mot at 17-20. In support, he relies on precedent where partial relief was found to be inadequate. *See id.* For example, in *Yee v. United States*, 512 F.2d 1383 (Ct. Cl. 1975), the plaintiff was erroneously discharged, reinstated five years later, and then considered but not selected for a promotion four months after reinstatement. *Id.* at 1384. A corrections board determined that the consideration for promotion was unjust because the five-year period between plaintiff's discharge and reinstatement had created a gap in his officer effectiveness reports ("OER"). *Id.* at 1384-85. The corrections board provided partial relief by removing the non-selection from plaintiff's records, but the court found that such relief was insufficient because it "failed either to place an adequate explanation in plaintiff's record of the 5-year gap in OERs (which was admittedly caused by Air Force error) or to withhold plaintiff's name from submission to Selection Boards until sufficient time had elapsed for plaintiff to accumulate OERs." *Id.* at 1386.

Here, in contrast, the Board's decision to apply *de facto* retirement as of November 1, 2006 fully addresses the error committed by the Marine Corps regarding Mr. Bias' retirement eligibility. Because Mr. Bias "requested retirement on 1 November 2006, and anticipated receipt of retirement pay beginning the same date," the Board determined that a "*de facto* retirement addressed the harm caused by the administrative error." AR 1-6. By providing retirement pay from the date Mr. Bias retired, the Board placed Mr. Bias "in the position he believed himself to be in at the time of [his first] retirement request." *Id.* The Board concluded that no further relief was therefore warranted. *See id.* Mr. Bias has failed to demonstrate that the Board erred in reaching that conclusion. In fact, another decision relied upon by Mr. Bias provides support for the Board's decision. *See Hamrick v. United States*, 96 F. Supp. 940, 943 (Ct. Cl. 1951) (holding that a retiring board erroneously released plaintiff from active duty, and that a full correction of such error entitled plaintiff to *retirement pay* "from the time his active duty pay ceased").

Thus, Mr. Bias has failed to show that the Board's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.[11]

---

[11]Accordingly, the court need not address Mr. Bias' additional requests for injunctive relief, such as consideration for promotion. *See* Second Am. Compl. at 10.

## CONCLUSION

For the reasons stated, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED IN PART and DENIED IN PART, the government's motion for judgment on the administrative record is GRANTED, and Mr. Bias' cross-motion for judgment on the administrative record is DENIED.  The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge